ABC PHONES OF NORTH CAROLINA, INC. d/b/a VICTRA,

*Plaintiff,*

v.

STRAX AMERICAS, INC. and MATTER BRANDS, LLC,

*Defendants.*

**DEFENDANT STRAX AMERICAS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULES 12(B)(2), (5), AND (6)**

## INTRODUCTION

This lawsuit involves a breach of contract claim by a North Carolina corporation against a Florida corporation. Plaintiff ABC Phones of North Carolina, Inc. d/b/a Victra ("Victra") alleges that it entered a Rebate Agreement with Defendant Strax Americas, Inc. ("Strax"), pursuant to which Victra would receive the benefits of certain rebates on Strax products that it purchased through a third-party supplier located in California. Strax—which contests the enforceability of the alleged Rebate Agreement, signed by Strax's VP of Marketing Heidi Adams—did not pay for invoices Victra issued under the alleged Rebate Agreement. In April 2024, Strax sold most of its assets to Defendant Matter Brands, LLC ("Matter Brands"), a Delaware corporation.

Victra issued invoices for rebates for Strax products that Victra ordered in 2023, seeking over $800,000 in rebate payments. Victra alleges that Strax's failure

to pay the invoices and related conduct are breaches of contract and unfair and deceptive trade practices. Victra further alleges summarily that Strax's transfer of assets to Matter Brands in April 2024—after the transactions at issue in Victra's claims—was conducted to avoid paying Strax's debts under the Rebate Agreement and is accordingly a voidable or fraudulent transfer. Victra asks this Court to adjudicate the dispute.

This Court should dismiss the claims against Strax for several reasons. First, this Court lacks personal jurisdiction over Strax. Victra failed to make proper service on Strax, and, even if service were properly made, this Court lacks personal jurisdiction over Strax because of Strax's lack of sufficient minimum contacts with North Carolina. Alternatively, to the extent this Court has personal jurisdiction over Strax, the unfair and deceptive trade practices claim should be dismissed under Rules 12(b)(6) and 9(d) of the Federal Rules of Civil Procedure because it fails to state a claim. The voidable transfer claims also should be dismissed under Rule 9(d) to the extent it relies on allegations of fraud because the Complaint contains no factual allegations, much less particularized allegations, that show fraudulent conduct, and its conclusory allegations of fraud are implausible based on the factual allegations that are made in the Complaint.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Strax, a Florida corporation with its principal place of business in Florida, is a specialist service company primarily engaged in the business of manufacturing mobile phone accessories and related products, including branding, design, and sourcing of products. (Compl. ¶ 7, D.E. 1; Decl. Tim Smart ¶ 3, D.E. 15-1.) Victra, a North Carolina corporation with its principal place of business in North Carolina, is an authorized Verizon retailer that sells cell phones and other wireless devices and accessories. (Compl. ¶¶ 1, 8–10.) The parties' relationship was initially formed after Victra published a Victra Power Portfolio Request for Proposal ("RFP") in late 2022 seeking a manufacturer to develop and bring a new brand of products to market.[2] (Smart Decl. ¶ 6.) Strax submitted a response to this RFP (the "RFP Response") on January 13, 2023, (Smart Decl. ¶ 7), which Victra ultimately accepted out of all the options available to it on March 3, 2023, (Smart Decl. ¶ 7).

Notably, Strax maintains no operational presence in North Carolina either by maintaining personnel or offices or owning property there. (Smart Decl. ¶ 5.)

---

[1] Strax recites certain allegations made in Victra's Complaint in its factual and procedural background. However, Strax disputes many of these allegations, and any recitation of allegations should not be construed as an admission or concession of any facts therein.

[2] Because Strax's Motion raises a challenge to personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Court may consider documents outside of the Complaint. *See Franks v. Beaufort Cnty. Sheriff's Off.*, No. 19-CV-90, 2019 WL 4670735, at *1 (E.D.N.C. Sept. 24, 2019) ("In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991))).

Following Victra's acceptance of Strax's RFP Response, the parties began to do business together in mid-2023. (Compl. ¶ 14; Smart Decl. ¶ 8.) Strax quickly mobilized to develop the brand, called Jewel, and bring it to market, coordinating with manufacturing facilities in Asia, to satisfy Victra's product specifications in a quantity high enough to meet the demand expected by Victra's representations of its needs. (*See* Smart Decl. ¶¶ 7–8.) Strax shipped its inventory to a third-party supplier, Superior Communications, Inc. ("Superior"), located in California. (Compl. ¶¶ 8–9; Smart Decl. ¶ 8.)

According to Victra's Complaint, Victra and Strax entered into a Rebate Agreement on September 22, 2023, whose terms provided that Strax would pay rebates to Victra on certain inventory purchases made through Superior. (Compl. ¶¶ 12–13; Compl. Ex. A, D.E. 1-1.) The alleged Rebate Agreement was signed by Heidi Adams and notes her title as VP of Marketing. (Compl. Ex. A, at 2.) Victra's Complaint contains no allegations showing that Ms. Adams was authorized to enter into the Rebate Agreement on Strax's behalf. (*See generally* Compl.)

Victra accordingly made purchases from Superior, which Victra alleges entitled it to rebate payments under the Rebate Agreement. (Compl. ¶ 14.) Victra submitted invoices to Strax, (Compl. Ex. B, D.E. 1-2), and now contends that Strax's failure to pay these invoices was improper and entitles it to damages, (Compl. ¶¶ 14–20).

On October 2, 2024, Victra filed the Complaint, alleging that Strax breached contractual obligations by failing to pay invoices owed to Victra. (Compl. ¶¶ 33–42. )

Victra also made conclusory allegations that Strax engaged in unfair and deceptive trade practices under N.C.G.S. § 75-1.1 and that Strax's unrelated transfer of assets to Matter Brands in April 2024, after the parties' relationship had concluded, is a voidable or fraudulent attempt to avoid Strax's unsupported debts to Victra. (Compl. ¶¶ 43–65.)

After filing the Complaint, Victra attempted to serve process on Strax by mailing the Summons and Complaint to Strax's shared office space in Key Biscayne, Florida, where Strax employees Marcela Herran and Alvaro Rodas work. (*See* Summons Civil Action, D.E. 4). The Summons was addressed generally to "Strax Americas, Inc." instead of any of Strax's individual officers, directors, or authorized agents. (Summons Civil Action 1.) The mailed Summons and Complaint were not discovered by Ms. Herran and Mr. Rodas until October 22, 2024, twelve days after the Summons and Complaint were postmarked. (Summons Civil Action 1; Decl. Marcela Herran ¶ 4, D.E. 15-2.)

## LEGAL STANDARD

### A.     Service of Process

"A motion under Rule 12(b)(4) challenges the sufficiency of process, while a Rule 12(b)(5) motion challenges the sufficiency of service of process." *Wilson v. Harnett Health Sys., Inc.*, No. 23-CV-348, 2024 WL 4549268, at *2 (E.D.N.C. Sept. 26, 2024). More specifically, Rule 12(b)(4) "objects to a defect in the content of the document served" and Rule 12(b)(5) "objects to a defect in the act (or lack) of delivery." *Gonzalez v. Wake Cnty. Pub. Sch. Sys.*, No. 20-CV-00684, 2022 WL 125295, at *3

(E.D.N.C. Jan. 12, 2022) (quoted authority omitted). "Once a party claims they have been improperly served, 'the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *Slocum v. Duke Progress Energy*, No. 23-CV-00680, 2024 WL 1481069, at *2 (E.D.N.C. Mar. 19, 2024).

The purpose of service of process is to give notice to the defendant, but "actual notice" is not the controlling standard. *See Mining Energy, Inc. v. Dir., Off. of Workers' Comp. Programs*, 391 F.3d 571, 576 (4th Cir. 2004) ("Nor is 'actual notice' ever the controlling standard in such disputes, even in the context of service of process."). Indeed, "[w]hile a defective service of process may give the defending party sufficient and actual notice of the proceedings, such actual notice does not give the court jurisdiction over the party." *Disabled Patriots of Am., Inc. v. Fu*, No. 08-CV-542, 2009 WL 1470687, at *4 (W.D.N.C. May 26, 2009) (quoting *Thomas & Howard Co. v. Trimark Catastrophe Servs.*, 151 N.C. App. 88, 91, 564 S.E.2d 569, 572 (2002)). "[Rule 4 is] there to be followed, and plain requirements for the means of effecting service of process may not be ignored.*" Wilson v. City of Jacksonville*, 682 F. Supp. 3d 481, 486 (E.D.N.C. 2023) (quoting *Armco, Inc. v. Penrod-Stauffer Bldg. Sys. Inc.*, 733 F.2d 1097, 1089 (4th Cir. 1984)). "When service of process is deficient, dismissal may also be proper under Rule 12(b)(2) for lack of personal jurisdiction." *Thompson v. Hanson*, No. 13-CV-194, 2014 WL 5810231, at *2 (E.D.N.C. Nov. 7, 2014) (citing *Armco Inc.*, 733 F.2d at 1089).

6

## B.    Personal Jurisdiction

"Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). If a court elects to resolve such a challenge without holding an evidentiary hearing, it may review "the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint." *See id.* at 268. "[A] plaintiff must establish facts supporting jurisdiction over the defendant by a preponderance of the evidence." *Id.*

## C.    Failure to State a Claim

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoted authority omitted). "[A] complaint must allege facts sufficient 'to raise a right to relief above the speculative level, thereby nudging the claims across the line from conceivable to plausible.'" *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012) (internal quotation marks and alterations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

7

In conducting this review, a court need not take as true "bare legal conclusions" unsupported by sufficient factual allegations. *Burnette*, 687 F.3d at 180. Notably, where a complaint alleges fraud, it must "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b).

## ARGUMENT

### I.   This Court lacks personal jurisdiction over Strax.

This Court lacks personal jurisdiction over Strax for two reasons. First, Victra failed to make proper service of process on Strax. Second, to the extent service may be sufficiently made, exercising personal jurisdiction would be improper because Strax lacks sufficient minimum contacts with North Carolina.

### A.   Victra's has not properly served Strax.

A motion pursuant to Rule 12(b)(5) is the appropriate means for challenging the sufficiency of service of process. *See Slocum* 2024 WL 1481069, at *2. "[T]he plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *Id.* (quoted authority omitted).

Relevant to this Motion, Rule 4(h)(1)(B) provides that a corporation may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]" Fed. R. Civ. P. 4(h)(1)(B). Rule 4(e)(1) also provides that service is proper if it follows relevant state law for serving a summons. Fed. R. Civ. P. 4(e)(1); *see* Fed. R. Civ. P. 4(h)(1)(A) (providing that service upon a corporation may be performed in the manner prescribed by Rule 4(e)(1)). Thus, service under

8

North Carolina law, under Rule 4(j)(6) of the North Carolina Rules of Civil Procedure (the "North Carolina Rules"), is also relevant to this inquiry.

Under that North Carolina Rule, a plaintiff may serve a corporation by the following four methods:

a. By delivering a copy of the summons and of the complaint to an officer, director, or managing agent of the corporation or by leaving copies thereof in the office of such officer, director, or managing agent with the person who is apparently in charge of the office.

b. By delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to be served or to accept service of process or by serving process upon such agent or the party in a manner specified by any statute.

c. By mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the officer, director or agent to be served as specified in paragraphs a and b.

d. By depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the officer, director, or agent to be served as specified in paragraphs a. and b., delivering to the addressee, and obtaining a delivery receipt. As used in this sub-subdivision, "delivery receipt" includes an electronic or facsimile receipt.

N. C. R. Civ. P. 4(j)(6).

Here, Victra mailed a copy of the summons and complaint to a shared office space maintained by Strax, where Ms. Herran and Mr. Rodas work. (Herran Decl. ¶ 3.) Victra did not deliver these documents to any of Strax's officers, directors, or designated agents. Thus, Victra's method of service fails under all applicable methods except North Carolina Rule 4(j)(6)(c), which, as stated above, allows for service to be made by mailing the summons and complaint. *See May v. Martin Fein*

9

*Int., Ltd.*, No. 21-CV-00083, 2022 WL 1597820, at *4 (E.D.N.C. May 19, 2022) (concluding that plaintiff's mailing of service of process was insufficient under all applicable methods of service except North Carolina Rule 4(j)(6)(c)).

But even under North Carolina Rule 4(j)(6)(c), Victra's Summons was insufficient because it was not addressed to any officer, director, or agent to be served; rather, Victra's service was addressed only to "Strax Americas, Inc." generally. (Summons Civil Action 1.) "A plaintiff cannot hand a document directly to an abstraction, so that abstraction must be served through an agent." *In re Newbrook Shipping Corp.*, 31 F.4th 889, 897 (4th Cir. 2022). Victra's failure to name a Strax officer, director, or legal agent to be served thus renders its attempted service of process insufficient as a matter of law. *See Gulley v. Rex Hosp., Inc.*, No. 14-CV-00127, 2014 WL 4537185, at *2 (E.D.N.C. Sept. 11, 2014) (concluding that plaintiff failed to properly serve defendant with process "because she failed to address the Summons and Complaint to an 'officer, director or agent' of [defendant] Rex Hospital, instead addressing it to only 'Rex Hospital.' "); *Slocum*, 2024 WL 1481069, at *3 (finding service of process inadequate because the summons did not list any of defendant's officers, directors, or agents); *see also May*, 2022 WL 1597820, at *5 (listing cases).

Due to Victra's insufficient service of process, this Court is deprived of personal jurisdiction over Strax and should accordingly dismiss Strax from this action. *See Cooley v. PHH Mortg. Servs.*, No. 19-CV-225, 2019 WL 5425761, at *1 (E.D.N.C. Oct. 22, 2019); *Durity v. Precision Walls, Inc.*, No. 19-CV-506, 2020 WL 5749998, at *2

(E.D.N.C. 2020) (dismissing complaint due to improper service of process); *see also Darden v. PRA Grp., Inc.*, No. 20-CV-00650, 2021 WL 1572566, at *5 (W.D.N.C. Apr. 21, 2021) (granting motion to dismiss under Rule 12(b)(4) for plaintiff's failure to direct service to an officer or agent authorized to receive service on behalf of defendant company).

### B. Strax does not have sufficient contacts with North Carolina for this Court to exercise personal jurisdiction over it.

Federal courts may exercise "personal jurisdiction over a defendant in the manner provided by state law." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *See* Fed. R. Civ. P. 4(k)(1)(A). As a threshold matter, a court may have personal jurisdiction over a defendant in two ways: "general personal jurisdiction over a defendant who has 'continuous and systematic contacts with the forum state regardless of where the relevant conduct occurs' " and "specific personal jurisdiction, which 'requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state.' " *Wall Recycling, LLC v. 3TEK Glob., LLC*, 497 F. Supp. 3d 30, 37 (M.D.N.C. 2020); *see generally Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011).

Here, Victra's Complaint does not allege that Strax maintains such significant contacts with North Carolina such that Strax should be subject to general personal jurisdiction in North Carolina.[3] Therefore, to exercise jurisdiction over a nonresident

---

[3] (*See* Compl. ¶ 2 (alleging that Strax is a Florida corporation with its principal place of business in Florida)); *see also Neal Boyz Family Trucking, LLC v. Brewer*, No. 24-CV-78, 2024 WL 3455087, at *4 (M.D.N.C. July 18, 2024) (concluding that general jurisdiction cannot

defendant like Strax, this Court's exercise of jurisdiction "must be authorized under the state's long-arm statute" and "comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc.*, 334 F.3d at 396.

" 'North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause. Thus, the dual jurisdictional requirements collapse into a single inquiry[.]" *Christian Sci. Bd. of Dir. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). In turn, this due process requirement reduces to a three-part test: a court's exercise of personal jurisdiction depends on "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoted authority omitted)).

The first prong of the above-stated test is satisfied if a defendant maintains sufficient " 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Consulting Eng'rs Corp.*, 561 F.3d at 277 (4th Cir. 2009) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To determine whether sufficient contacts exist, a court considers various factors, including:

> [(1)] whether the defendant maintains offices or agents in the forum state; [(2)] whether the defendant owns property in the forum state; [(3)]

apply over a business entity that is not alleged to be incorporated in or to maintain its principal place of business in North Carolina).

whether the defendant reached into the forum state to solicit or initiate business; [(4)] whether the defendant deliberately engaged in significant long-term business activities in the forum state; [(5)] whether the parties contractually agreed that the law of the forum state would govern disputes; [(6)] whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; [(7)] the nature, quality and extent of the parties' communications about the business being transacted; and [(8)] whether the performance of contractual duties was to occur within the forum.

*Consulting Eng'rs Corp.*, 561 F.3d at 278 (citations omitted).

For purposes of the due process analysis, the defendant must have a "substantial connection with the State," so that the "quality and nature" of a defendant's relationship to the forum "can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479–80 (1985) (internal citations and emphasis omitted). Where a contract is involved, the jurisdictional inquiry does not turn on "the place of contracting or of performance," and "an individual's contract with an out-of-state party alone can[not] automatically establish sufficient minimum contacts in the other party's home forum[.]" *Id.* at 478.

Applying the above-listed factors to this case, Strax's connection to North Carolina is too attenuated to subject it to jurisdiction in this State. Strax maintains no offices or agents in North Carolina, owns no property in North Carolina, and made its shipments of inventory to Superior, not Victra in North Carolina. (Smart Decl. ¶¶ 5, 8.) For these reasons, the parties' communications and Strax's activities with respect to its business with Victra undermine any finding that Strax is subject to personal jurisdiction in North Carolina.

13

The nature of the business between the parties further shows that a finding of personal jurisdiction would be improper. Victra engaged Strax to manufacture the Jewel product line, which it so manufactured through facilities in Asia and shipped to Superior in California. (Smart Decl. ¶¶ 3, 7–8.) This means the only aspects of the parties' contractual performance that could be construed to have occurred in North Carolina is Victra's order placement and Superior's shipping of Strax products to North Carolina, but the vast majority of the contractual performance occurred outside of and did not involve this State. *See Consulting Eng'rs Corp.*, 561 F.3d at 278 (identifying that to determine minimum contacts, courts look to "whether the performance of contractual duties was to occur within the forum"). As a result, the eighth factor enumerated in *Consulting Engineers Corp.* also cuts against a finding that this Court has personal jurisdiction over Strax.

Notably, when determining whether sufficient minimum contacts exist in contractual cases, North Carolina courts have afforded special consideration to the third *Consulting Engineers Corp.* factor as to "whether the defendant reached into the forum state to solicit or initiate business." *See CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 n.17 (4th Cir. 2009) ("Pursuant to applicable precedent, we are entitled to accord special weight to the fact that it was [the defendant] that initiated contact with [the plaintiff] in [the forum state]."). This factor, too, shows that Strax is not subject to personal jurisdiction in North Carolina.

Victra initially published its RFP as an open call for proposals. (Smart Decl. ¶ 6.) In other words, it was Victra that reached outside of North Carolina to solicit

14

business from entities like Strax. (Smart Decl. ¶¶ 6–7.) Strax answered Victra's call when it submitted the RFP Response. (Smart Decl. ¶ 7.)

Thus, nearly all of the *Consulting Engineers Corp.* factors undermine this Court's exercise of personal jurisdiction over Strax. *Compare Protocol, LLC*, 18 F. Supp. 3d at 699–704 (finding no personal jurisdiction where contracts at issue did not mention that North Carolina law would govern, contracts were standardized forms, one party reached into North Carolina instead of the other way around, and contacts between plaintiff and defendant were only incidentally because of one party's presence in North Carolina), *with Blue Mako, Inc. v. Minidis*, 472 F. Supp. 2d 690, 700–01 (M.D.N.C. 2001) (finding personal jurisdiction where plaintiff and defendant negotiated a franchise contract in North Carolina and defendant anticipated a substantial, continuous relationship with plaintiff in North Carolina).

The alleged Rebate Agreement itself also supports the conclusion that the Court lacks personal jurisdiction over Strax. The alleged Rebate Agreement notes that Strax is based in Florida and that Victra will pay Superior (a company in California) for all inventory purchased from Strax. (Compl. Ex. A, at 1.) The alleged Rebate Agreement further provides that Victra would send invoices to Strax for amounts owed; in effect, the alleged contract contemplated communications out of North Carolina into Florida. (*See* Compl. Ex. A, at 1.) While the document selects North Carolina as the proper venue for litigation, this venue-selection clause is not dispositive to the Court's analysis. *See Consulting Eng'rs Corp.*, 561 F.3d at 281 ("The inclusion of a choice of law clause is one factor that a court may take into account in

determining whether the exercise of personal jurisdiction is justified, but it is no more than that.")

The Court should consider that, by operation of several other important provisions in the alleged contract, most of the performance contemplated by the alleged Rebate Agreement was to occur outside of North Carolina. This, and all of the other *Consulting Engineers Corp.* factors, weigh heavily against a finding that the Court has personal jurisdiction over Strax. This Court should accordingly conclude that it has no personal jurisdiction over Strax due to its lack of sufficient minimum contacts with North Carolina and dismiss it from the above-captioned action.

## II. The Complaint fails to state a claim for unfair and deceptive trade practices.

In the alternative, to the extent the Court concludes that it has personal jurisdiction over Strax, Victra's unfair and deceptive trade practices claims should be dismissed under Rule 12(b)(6) for failure to state a claim, because the allegations in the Complaint do not identify any conduct that is actionable under section 75-1.1 of the North Carolina General Statutes. (Compl. ¶¶ 43–55.)

### A. Requirements for an unfair and deceptive trade practices claim.

To recover under the Unfair and Deceptive Trade Practices Act ("UDTPA"),[4] the plaintiff must show "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act

---

[4] N.C. Gen. Stat. § 75-1 *et seq.*

16

proximately caused injury to the plaintiff." *Nobel v. Foxmoor Grp., Inc.*, 380 N.C. 116, 120, 868 S.E.2d 30, 33 (2022) (quoted authority omitted).[5] For this second prong, "in or affecting commerce" is defined broadly as "all business activities, however denominated[.]" N.C.G.S. § 75-1.1(b).

An "unfair or deceptive act or practice" for purposes of the UDTPA can fall within five categories: "1) unfair conduct, 2) deceptive misrepresentations, 3) anti-competitive conduct, 4) certain *per se* violations of the statute, and 5) breaches of contract occurring under aggravating circumstances." *Exclaim Mktg., LLC v. DirecTV, LLC*, 134 F. Supp. 3d 1011, 1022 (E.D.N.C. 2015). Here, Victra alleges that Strax "ma[de] certain false, deceptive, misleading, and fraudulent representations" and "conceal[ed] material facts from Victra[.]" (Compl. ¶ 46.) Victra also alleges that this conduct was "immoral, unethical, oppressive, unscrupulous, inequitable, and/or substantially injurious to customers." *Exclaim Mktg., LLC*, 134 F. Supp. 3d at 1022.

More specifically, Victra has lodged six grievances against Strax for its (1) concealment and suppression of material facts with respect to its obligations under the Rebate Agreement, (2) failure to pay its debts, (3) divestiture of its assets and business to Matter Brands, allegedly to avoid paying its debts, (4) failure to notify Victra of the divestiture, (5) misrepresentation of its intentions to Victra before the parties allegedly entered into the Rebate Agreement, and (6) making of other misrepresentations and omissions as described in the Complaint. (Compl. ¶ 47.)

---

[5] Because federal jurisdiction in this matter rests in diversity, (Compl. ¶ 4), this Court should apply governing state law to the UDTPA claim. *Stahle v. CTS Corp.*, 817 F.3d 96, 99–100 (4th Cir. 2016).

None of these alleged grievances can be classified as "anti-competitive conduct" and do not fall under any *per se* violations of the UDTPA.[6]  Thus, while Victra does not clearly state the basis for its UDTPA claim, it can only be based on some combination of (1) unfair conduct, (2) deceptive misrepresentations, and (3) breach of contract with aggravating circumstances.  All three of these bases fail under Rule 12(b)(6).

### A.    Victra pleads no unfair or deceptive conduct.

"A practice is unfair when it offends public policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  *Gupton v. Son-Lan Dev. Co.*, 205 N.C. App. 133, 143, 695 S.E.2d 763, 771 (2010) (quoted authority omitted).  "[A]n 'unfair practice' under the [UDTPA] is conduct 'which a court of equity would consider unfair . . . [and] is to be judged by viewing it against the background of actual human experience and by determining its intended and actual effects upon others."  *S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 535 (4th Cir. 2002) (quoting *Harrington Mfg. Co. v. Powell Mfg. Co.*, 38 N.C. App. 393, 400, 248 S.E.2d 739, 744 (1978)).  Conduct is also considered unfair "where a party engages in conduct manifesting an inequitable assertion of power or position[.]"  *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000).  As to deception, the "plaintiff must . . . show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception."  *Gress v. Rowboat Co.*, 190 N.C. App. 773, 776, 661 S.E.2d 278, 281 (2008) (omission in original) (quoted authority omitted)).

---

[6] *See generally* N.C.G.S. §§ 75-20, 29, 38–40, 42–43, 62–65, 118, 122, 128, 135.

None of the factual allegations in the Complaint suggests that Strax abused a position of power over Victra or alleges how Strax acted unscrupulously; further, the Complaint does not allege which or how any of Strax's statements or actions had the tendency or capacity to deceive Victra. (*See generally* Compl.) The Complaint also does not allege that Strax held a position of power or influence over Victra or, if it did, how Strax abused such a position. (*See generally* Compl.) Thus, Victra has failed to adequately plead that Strax's conduct was either deceptive or unfair due to an inequitable assertion of Strax's power or position.

To the extent Victra's UDTPA claim rests on unfair or deceptive misrepresentations or omissions Strax made to it, the claim fails for several reasons. Certain of Victra's allegations that Strax's conduct was unfair or deceptive are conclusory and fail to properly identify alleged objectionable conduct. (Compl. ¶¶ 57(a), (d)–(f).) This includes the allegations that Strax knowingly concealed, suppressed, or omitted material facts, misrepresented Strax's intentions to Victra before the execution of the Rebate Agreement, failed to inform Victra that it divested its assets to Matter Brands, and otherwise made misrepresentations and omissions as set forth in the Complaint. (Compl. ¶¶ 57(a), (d)–(f).) These allegations are conclusory and do not clarify which material facts were concealed, suppressed, or omitted, how Strax misrepresented its intentions to Victra, or what other misrepresentations or omissions Strax made. *Blackman v. Boston Whaler, Inc.*, 649 F. Supp. 3d 142, 156 (E.D.N.C. 2023) (concluding that plaintiff failed to allege UDTPA claim where complaint did not plausibly allege any direct statements constituting an

actual misrepresentation or omission). The Complaint further does not allege that Victra relied on any of Strax's misrepresentations or that those misrepresentations caused the damages of which Victra complains.

The Court is not required to, and should not, take these conclusory allegations as true. *Johnson v. Cricket Council USA, Inc.*, 658 F. Supp. 3d 276, 283–84 (E.D.N.C. 2023) (dismissing UDTPA claim as conclusory where plaintiff summarily alleged that defendants "made false representations or concealed material facts" with respect to their true intentions surrounding a transaction, their ability to pay expected debts, and "such other acts and omissions as may be shown at trial"). Stripped of these conclusory allegations, Victra's UDTPA claim has no supporting allegations upon which it may rest, which warrants the claim's dismissal under Rule 12(b)(6).

Even if conclusory allegations were sufficient (which they are not), the Court should still dismiss the claim as implausible due to the discrepancy between the facts and conclusions. Importantly, the exhibits to the Complaint show that Victra entered the Rebate Agreement and ordered product from Strax during calendar year 2023. (*See* Compl. Ex. A at 1, Ex. B at 2–3.) The Complaint alleges that Strax sold its assets to Matter Brands in or around early April 2024 and does not allege that Strax formed the plan to do so earlier. (Compl. ¶ 57.) Thus, this gap in time and lack of allegations that Strax entered into the relationship with Victra intending to sell its assets or avoid its obligations belie the conclusory allegations that Strax concealed the asset sale and induced Victra to enter the alleged Rebate Agreement by hiding the asset sale and rather make those conclusory legal allegations implausible.

20

Ultimately, for Victra's failure to properly identify the alleged misrepresentations Strax made, that it relied on those misrepresentations, or that those misrepresentations proximately caused its damages, its UDTPA claim fails to state a claim. Accordingly, this Court should dismiss the claim under Rule 12(b)(6).

### B. Victra pleads no aggravating circumstances making a breach of contract actionable under section 75-1.1.

The UDTPA does not "apply to an individual who merely breaches a contract[,]" *Bumpers*, 367 N.C. at 88, 747 S.E.2d at 226, unless plaintiff can proffer evidence of "substantial aggravating circumstances" attending the breach" like "unfairness or 'deception either in the formation of the contract or in the circumstances of its breach[,]' " *SciGrip, Inc. v. Osae*, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020) (quoting *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989)); *see also Mitchell v. Linville*, 148 N.C. App. 71, 74, 557 S.E.2d 620, 623 (2001) ("Neither an intentional breach of contract nor a breach of warranty [ ] constitutes a violation of Chapter 75.").

Certain conduct of which Victra complains in its UDTPA claim falls under a breach of contract with aggravating circumstances theory. This includes the statements that Strax withheld payment on its alleged debts to Victra. (Compl. ¶¶ 57(b)–(c).)

"Generally, substantial aggravating circumstances include some element of deception, such as forged documents, lies, or fraudulent inducements." *Popper v. Hartford Fin. Servs. Grp., Inc.*, 682 F. Supp. 3d 469, 476 (2023). The Complaint, as pleaded, offers no allegations that Strax deceived Victra or otherwise fraudulently

21

induced it into signing the Rebate Agreement.[7]  Further, the Complaint does not allege that any aggravated circumstances attended Strax's failure to pay debts allegedly owed under the Rebate Agreement.  *Riese*, 284 F.3d at 536 ("It is clear, however, that conduct carried out pursuant to contractual relations rarely violates the U[D]TPA. . . . [A] breach of contract must be particularly egregious to permit recovery under North Carolina's U[D]TPA.")

Ultimately, these aspects of Victra's UDTPA claim are a repackaged breach of contract claim.  While Victra may have alleged enough to support a claim for an intentional breach of contract, its failure to indicate qualifying aggravating circumstances prevents these allegations from rising to the level of unfair and deceptive conduct.  *Waterford I at Cary Park Condo. Homeowners Ass'n, Inc. v. Nationwide Prop. & Cas. Ins. Co.*, 669 F. Supp. 3d 531, 537 (E.D.N.C. 2023) (dismissing UDTPA claim because "[t]he general factual allegations in the complaint involve claims indistinguishable from the underlying breach of contract, which cannot by themselves support a UDTPA claim.").  As a result, the Court should dismiss this aspect of Victra's UDTPA claim under Rule 12(b)(6).

### III. To the extent the unfair and deceptive trade practices and voidable transfer claims are based on allegations of fraud, those claims should be dismissed for failure to comply with Rule 9(b).

Certain statements in Victra's UDTPA claim and its voidable/fraudulent transfer claim allege that Strax defrauded or intended to defraud Victra, but these

---

[7] Rather, Strax challenges the enforceability of the Rebate Agreement because Victra negotiated it with Heidi Adams, who lacked authority to enter the agreement on behalf of Strax.

statements do not allege fraud with the requisite particularity to satisfy Rule 9(b). (Compl. ¶¶ 28, 46, 48, 58–59.)  As a result, these claims should be dismissed to the extent they are based on a fraud theory.  To properly plead fraud under North Carolina law, a plaintiff must allege a "(1) [f]alse representation or concealment of material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party."  *Head v. Gould Killian CPA Grp., P.A.*, 371 N.C. 2, 9, 812 S.E.2d 831, 837 (2018).

Beyond Rule 8's regular pleading standard, allegations of fraud must also meet the more stringent "particularity" requirement of Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  To satisfy this requirement, a plaintiff must "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 280 (4th Cir. 2014) (quoted authority omitted)).  This requirement ensures "(1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

Here, Victra's allegations of fraud are again conclusory.  All of the Complaint's allegations invoking fraud merely state that Strax engaged in fraud, (Compl. ¶ 44), that it made fraudulent representations, (Compl. ¶ 46), or that its conduct included

fraud, (Compl. ¶ 48), or was conducted with intent to defraud, (Compl. ¶¶ 28, 58–59). None of these allegations, or any other allegations in the Complaint, describe who engaged in this fraudulent conduct on Strax's behalf, who was defrauded by that conduct, where the fraud occurred, or how the fraud occurred.[8]  These deficiencies call for dismissal of the fraud-based allegations of the Complaint.[9]

The closest the Complaint gets to satisfying the Rule 9(b) standard is through its allegations that Strax transferred nearly all of its assets to Matter Brands in the beginning of April 2024 to defraud Victra.  (Compl. ¶¶ 26–29.)  But even those allegations fall short of Rule 9(b)'s heightened pleading standard because most of the statements are alleged upon information and belief.  "Allegations based 'upon information and belief' are generally insufficient to meet the requirements of Rule 9(b)."  *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 197 (M.D.N.C. 1997).  Such allegations can satisfy Rule 9(b) "only when the matters are particularly within the defendants' knowledge, and facts are stated upon which the belief is founded."  *Id.*

Here, Victra does not indicate where its belief comes from nor upon what information it is based.  (*See generally* Compl.)  The Complaint also does not indicate

---

[8] To the extent Victra's fraud theory depends on the fact that Strax had no intent to perform its obligations under an agreement, Victra was also required to "sufficiently describe the circumstances showing that [Strax] had no intent to perform[.]"  *Irwin v. Fed. Express Corp.*, No. 14-CV-557, 2014 WL 5605743, at *5 (M.D.N.C. Nov. 4, 2014).  The Complaint also fails to allege this intent with particularity.

[9] This dismissal should, in particular, include the aspect of Plaintiff's UDTPA claim that rests on allegations that Strax entered into the Rebate Agreement without intent to comply with it, (Compl. ¶ 57(e).), which is essentially an accusation of fraud.  *Smith v. Hatteras/Cabo Yachts, LLC*, No. 20-CV-00212, 2021 WL 2425985, at *4 (E.D.N.C. June 14, 2021).

that there are facts uniquely within Strax's control that would support Victra's fraud theory.  (*See generally* Compl.)  Indeed, the Complaint's reference to a public press release that contains some details of Strax's alleged fraudulent transfer suggests the opposite conclusion.  (*See* Compl. ¶ 27.)  Thus, these additional allegations made on information and belief are not enough to particularly allege fraud under Rule 9(b).

Even after taking these statements as true at face value, Victra's intended fraud theory is not plausible.  Victra and Strax were in a business relationship in early to mid-2023 as shown by Victra's invoices, (*see* Compl. Ex. B at 2–3), and allegedly entered into the Rebate Agreement on September 22, 2023, (Compl. Ex. A at 3).  Strax sold its assets to Matter Brands in April 2024.  (Compl. ¶ 57.)  This large gap in time belies the assertion that Strax entered into a business relationship with Victra with the intent to sell its assets, to avoid its obligations to Victra, or to defraud Victra.  On a fundamental level, the Complaint fails to allege that Strax's transfer of assets was plausibly related to its relationship with Victra.  Thus, even if the Court finds that Victra's Complaint has pleaded all the necessary components for its fraud-based UDTPA and voidable/fraudulent transfer claims, those claims should still be dismissed as not plausible under Rule 12(b)(6).

Accordingly, the Court should dismiss Victra's UDTPA and voidable/fraudulent transfer claims under Rules 12(b)(6) and Rule 9(b) to the extent they are based on fraud.  *See N.C. Farmers' Assistance Fund, Inc. v. Monsanto Co.*, 740 F. Supp. 2d 694, 705 (M.D.N.C. 2010) (dismissing complaint under Rule 9(b) where complaint employing statements made on information and belief did not

provide information on which they relied, plausible reasons for belief, or indicate any facts uniquely in defendants' possession).

## CONCLUSION

For the foregoing reasons, Strax respectfully requests that the Court grant its Motion to Dismiss and dismiss Strax from this action for lack of personal jurisdiction for Victra's failure to effect proper service under Rule 12(b)(5) or for Strax's lack of minimum contacts with North Carolina under Rule 12(b)(2).  In the alternative, Strax respectfully requests that the Court dismiss Victra's UDTPA claim under Rules 12(b)(6) and 9(d) and dismiss Victra's fraudulent transfer claim under Rule 9(d) to the extent it is based on fraud.

Respectfully submitted, this the 2nd day of December, 2024.

ELLIS & WINTERS LLP

/s/ Michelle A. Liguori
Michelle A. Liguori
N.C. State Bar No. 52505
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010
michelle.liguori@elliswinters.com

*Counsel for Defendant Strax Americas, Inc.*

26

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.2(f)(3), the undersigned hereby certifies that the foregoing memorandum contains fewer than 8,400 words, exclusive of the elements to be omitted from the word count per Rule 7.2(f)(1). Specifically, the foregoing memorandum contains 6847 words, as reported by counsel's word processing software.

/s/ Michelle A. Liguori
Michelle A. Liguori