UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Case No.: 5:24-cv-00565-FL

| | |
|---|---|
| ABC PHONES OF NORTH CAROLINA, INC. d/b/a VICTRA,<br><br>Plaintiffs,<br><br>vs.<br><br>STRAX AMERICAS, INC. and MATTER BRANDS LLC,<br><br>Defendants. | **DEFENSES, ANSWER, AND COUNTERCLAIMS OF DEFENDANT STRAX AMERICAS, INC.** |

Defendant Strax Americas, Inc. ("Strax") responds to the allegations of the Complaint as follows:

## FIRST DEFENSE

The claims against Strax should be dismissed pursuant to Rule 12(b)(4) and/or 12(b)(5) of the Federal Rules of Civil Procedure because Plaintiff ABC Phones of North Carolina, Inc. d/b/a Victra ("Victra") has not made sufficient service of process on Strax.

## SECOND DEFENSE

The claims against Strax should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure because this Court lacks personal jurisdiction over Strax, a Florida corporation with its principal place of business in Florida.

# THIRD DEFENSE
## Responses to Enumerated Paragraphs of the Complaint

Addressing the enumerated paragraphs of Victra's Complaint, Strax states as follows:

## PARTIES, JURISDICTION, AND VENUE[1]

1. It is admitted on information and belief that ABC Phones of North Carolina, Inc. d/b/a Victra is a North Carolina corporation. Except as expressly admitted, Strax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1, and the same, therefore, are denied.

2. It is admitted that Strax is a Florida corporation with its principal place of business at 200 Crandon Blvd., Suite 320, Key Biscayne, FL 33149, though there is not someone at the office on a regular basis, as the employees primarily work remotely.

3. It is admitted on information and belief that Defendant Matter Brands, LLC ("Matter Brands") is a Delaware limited liability company. Except as expressly admitted, Strax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3, and the same, therefore, are denied.

---

[1] Strax has adopted the headings in the Complaint only for the convenience of the Court and parties. To the extent the headings are deemed to contain allegations of fact, they are denied.

2

4. Strax does not contest that this Court has subject-matter jurisdiction.

5. The allegations of paragraph 5 are denied.

6. The allegations of paragraph 6 are denied.

## FACTS

### Rebates Due From Strax Under Rebate Agreement

7. It is admitted that Strax is a specialist service company in mobile phone accessories, including branding, design, and sources of products. Except as expressly admitted, the allegations in Paragraph 7 are denied.

8. The allegations of paragraph 8 are denied.

9. It is admitted that products are manufactured by factories in Asia, on behalf of Strax, and that Victra purchased Strax products through Superior. Except as expressly admitted, the allegations in Paragraph 9 are denied.

10. The allegations of paragraph 10 are admitted.

11. The allegations of paragraph 11 are denied.

12. The allegations of paragraph 12 are denied.

13. It is admitted that Exhibit A to the Complaint is a writing bearing the title "Rebate Agreement." Except as expressly admitted, the allegations in Paragraph 13 are denied.

3

14. It is admitted that Strax sent the first order of Jewel power products to Superior after July 1, 2023. Except as expressly admitted, the allegations in Paragraph 14 are denied.

15. It is admitted that Victra submitted invoices to Strax for rebates in the amount of $857,965.88. Except as expressly admitted, the allegations in Paragraph 15 are denied.

16. It is admitted that Exhibit B to the Complaint contains invoices that Victra issued to Strax and that Strax did not pay the invoices. Except as expressly admitted, the allegations in Paragraph 16 are denied.

17. It is admitted that Victra provided Strax with quarterly SKU-level purchase data related to the invoices. Except as expressly admitted, the allegations in Paragraph 17 are denied.

18. It is admitted that the document in Exhibit A to the Complaint, titled "Rebate Agreement," is a writing that is the best evidence of its contents. Except as expressly admitted, the allegations in Paragraph 18 are denied.

19. It is admitted that Strax has not paid any of the invoices in Exhibit B to the Complaint. Except as expressly admitted, the allegations in Paragraph 19 are denied.

20. The allegations of paragraph 20 are denied.

21. The allegations of paragraph 21 are admitted.

22. The allegations of paragraph 22 are admitted upon information and belief.

23. The allegations of paragraph 23 are admitted.

24. The allegations of paragraph 24 are admitted.

25. It is admitted that Strax has not paid the invoice in Exhibit C to the Complaint. Except as expressly admitted, the allegations in Paragraph 25 are denied.

**Strax Offloads its Assets and Business to Matter Brands**

26. It is admitted that, in early April 2024, Strax sold substantially all its assets, and certain specified liabilities, of its business, as well as certain assets of its distribution business to Matter Brands. Except as expressly admitted, the allegations in Paragraph 26 are denied.

27. It is admitted that Strax announced that it entered into an Assets Purchase Agreement with Matter Brands, LLC, formerly Alara Inc, to divest the brands Clckr, Jewel and Fundamental as well as key customer contracts and the majority of the US organization. Except as expressly admitted, Strax lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 and the same, therefore, are denied.

28. The allegations of paragraph 28 are denied.

29. The allegations of paragraph 29 are denied.

30. It is admitted that, at the time Strax sold its assets to Matter Brands, Strax was facing significant debt; however, Strax expected its cash generation ability and remaining customer agreements to be sufficient to pay

5

its debts over time. Except as expressly admitted, the allegations in Paragraph 30 are denied.

31. It is admitted that Matter Brands purchased Strax's assets. Except as expressly admitted, the allegations in Paragraph 31 are denied.

32. It is admitted that Matter Brands has refused to pay invoices issued pursuant to the document attached as Exhibit A to the Complaint entitled "Rebate Agreement." Except as expressly admitted, Strax lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 32 and the same, therefore, are denied.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

33. Strax incorporates by reference as if fully set forth its responses to the allegations contained in Paragraphs 1–32 of the Complaint.

34. The allegations of paragraph 34 are denied.

35. The allegations of paragraph 35 are denied.

36. It is admitted that Strax did not amend or agree upon modifications to the document contained in Exhibit A to the Complaint titled "Rebate Agreement." Except as expressly admitted, the allegations in Paragraph 36 are denied.

37. The allegations of paragraph 37 are denied.

38. The allegations of paragraph 38 are denied.

39. The allegations of paragraph 39 are denied.

6

40. The allegations of paragraph 40 are denied.

41. It is admitted that Strax and Victra entered an agreement in connection with an October 2023 sales contest, and that Strax has not paid the $10,000 invoice that Victra issued in relation to that agreement. Except as expressly admitted, the allegations in Paragraph 41 are denied.

42. The allegations of paragraph 42 are denied.

## SECOND CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices)

43. Strax incorporates by reference as if fully set forth its responses to the allegations contained in Paragraphs 1–42 of the Complaint.

44. The allegations of paragraph 44 are denied.

45. The allegations of paragraph 45 are admitted.

46. The allegations of paragraph 46 are denied.

47. The allegations of paragraph 47 are denied, including all subparts.

48. The allegations of paragraph 48 are denied.

49. The allegations of paragraph 49 are denied.

50. The allegations of paragraph 50 are denied.

51. The allegations of paragraph 51 are denied.

52. The allegations of paragraph 52 are denied.

53. The allegations of paragraph 53 are denied.

54. The allegations of paragraph 54 are denied.

7

55. The allegations of paragraph 55 are denied.

### THIRD CLAIM FOR RELIEF
### (Voidable/Fraudulent Transfer)

56. Strax incorporates by reference as if fully set forth its responses to the allegations contained in Paragraphs 1–55 of the Complaint.

57. It is admitted that, in early April 2024, Strax sold substantially all its assets, and certain specified liabilities, of its business, as well as certain assets of its distribution business to Matter Brands. Except as expressly admitted, the allegations in Paragraph 57 are denied.

58. The allegations of paragraph 58 are denied.

59. The allegations of paragraph 59 are denied.

60. It is admitted that, at the time Strax sold its assets to Matter Brands, Strax was facing significant debt; however, Strax expected its cash generation ability and remaining customer agreements to be sufficient to pay its debts over time. Except as expressly admitted, the allegations in Paragraph 60 are denied.

61. The allegations of paragraph 61 are denied.

62. The allegations of paragraph 62 are denied.

63. The allegations of paragraph 63 are denied.

64. The allegations of paragraph 64 are denied.

65. The allegations of paragraph 65 are denied.

## RESIDUAL DENIAL

All allegations not otherwise addressed are denied.

## FOURTH FURTHER DEFENSE

Victra's claims fail because the Rebate Agreement is not supported by valid consideration.

## FIFTH FURTHER DEFENSE

The Rebate Agreement is unenforceable because Heidi Adams lacked authority to enter the agreement on behalf of Strax and Victra lacked any valid basis for believing that Ms. Adams had such authority.

## SIXTH FURTHER DEFENSE

Victra's non-contractual claims are barred in whole or in part by the economic loss rule.

## SEVENTH FURTHER DEFENSE

Defendants reserve the right to add such other and further defenses as may be supported by the facts in this action.

## COUNTERCLAIMS

1. Without waiving its objections to service of process and personal jurisdiction, and alternatively to those defenses, Strax asserts the following counterclaims. See Krausz Indus. Ltd. v. Smith-Blair, Inc., 188 F. Supp. 3d 545, 552 (E.D.N.C. 2016).

2. Strax brings these counterclaims to enforce its rights in contract, law, and equity based on Victra's entry of a supply contract with Strax, through which Victra induced Strax to develop a new product line and to mobilize production of that and other products. Victra precipitously breached the supply contract, causing hundreds of thousands of dollars of damage to Strax.

## **Parties and Jurisdiction**

3. Strax Americas, Inc. is a Florida corporation with its principal place of business in Florida.

4. Strax is a global brand and distribution business that develops and distributes accessories that power mobile lifestyles. Strax's portfolio of branded accessories has covered all major accessory categories, including protection, power, connectivity, and personal audio.

5. Strax's officers include Ingvi Tomasson and Gudmundur Palmason. At all times relevant hereto, Tim Smart has served as President and Ian Pearson has served as Vice President of Sales.

6. On information and belief, ABC Phones of North Carolina, Inc. d/b/a Victra is a North Carolina corporation with its principal place of business in North Carolina.

7. Victra is a retailer that sells wireless devices, accessories, and mobile service agreements.

8. This Court has personal jurisdiction over Victra, which filed this action in this Court.

9. This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1332 and 1367(a).

## Factual Allegations

10. On December 12, 2022, Victra issued a request for proposals ("RFP") seeking a supplier for its power portfolio.

11. Victra communicated to Strax on multiple occasions that the RFP was a two-year tender.

12. On January 13, 2023, Strax responded to the RFP, proposing to develop the "Jewel" branded premium power range and to supply various power products under that brand name.

13. Victra accepted Strax's proposal on March 3, 2023.

14. The parties also discussed the terms of the contract in follow-up emails and oral communications.

15. The majority of communications about the RFP, response to the RFP, and contract terms were handled by Phil Ganbarg, Nathan Marlow, and Scott Koesters, on behalf of Victra, and Tim Smart and Ian Pearson, on behalf of Strax.

16. The parties agreed that Victra would purchase 12 SKUs from Strax, starting in the first quarter of 2023.

17. Strax quickly mobilized production to fulfill its obligations as agreed.

18. Victra did not make these purchases as agreed and instead deceived Strax.

19. First, Victra, did not begin placing orders until mid-2023. After several shipments, Victra increased its order volume, leading Strax to continue to mobilize production.

20. Then, by December 2023, Victra suddenly informed Strax that it would be going in a different business direction and ceased placing orders. This left Strax with several hundred thousand dollars' worth of product, which Strax had produced for the benefit of Victra pursuant to the parties' contract. Victra has refused to pay for this product.

21. Upon information and belief, Victra received financial incentives from an alternate supplier—into the seven figures. This was communicated by Scott Koesters in a meeting with Ingvi Tomasson and Tim Smart at their suite meeting room at the Wynn in Las Vegas during the CES show, where Mr. Koesters reported that this led Victra to breach its agreement with Strax.

22. Upon information and belief, Victra engaged in other unfair, deceptive, and wrongful conduct as well.

23. For example, upon information and belief, Victra copied the design of Strax's Jewel chargers, and also the packaging, which is almost identical in

12

look and feel other than the name change to Simple, and requested the same be produced by the alternate supplier.

24. Victra also deceptively negotiated a purported Rebate Agreement with a lower level Strax employee, Heidi Adams. Ms. Adams's title is Vice President of Marketing.

25. Ms. Adams was not listed in the organizational chart that Strax shared with Victra with its response to the RFP.

26. Ms. Adams was not authorized to enter a Rebate Agreement on behalf of Strax.

27. Victra had no valid basis for believing that Ms. Adams was authorized to enter contracts on behalf of Strax because its dealings with Strax had primarily been through higher officers in the organization, such as Ingvi Tomasson and Tim Smart.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

28. Strax incorporates herein by reference the allegations contained in the foregoing paragraphs of its counterclaim.

29. Victra, in accepting Strax's response to Victra's request for proposals, entered into a supply contract with Strax.

30. The terms of the contract include the RFP, Strax's response to the RFP, Victra's acceptance of Strax's response to the RFP, and email and oral communications between the parties.

31. By communicating to Strax multiple times that the RFP was a two-year tender and accepting Strax's proposal in response to the RFP, Victra agreed to use Strax as a supplier, for a two-year tender.

32. The supply contract was supported by good and valuable consideration, including Strax's agreement to develop and supply product for Victra for two years and Victra's agreement to use Strax as a supplier for two years.

33. Strax complied with its obligations under the contract.

34. Victra breached the contract, by ceasing to use Strax as a supplier in December 2023 and failing to pay Strax for product that Strax produced for Victra pursuant to the parties' contract.

35. Strax has been damaged by Victra's breach of contract, in an amount in excess of $75,000.

36. Strax is entitled to recover compensatory damages from Victra, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
## Unfair and Deceptive Trade Practices

37. Strax incorporates herein by reference the allegations contained in the foregoing paragraphs of its counterclaim.

38. Victra engaged in unfair and deceptive trade practices by inducing Strax to develop the Jewel premium power range, leading Strax to believe that Victra intended to use Strax as a supplier for the Jewel premium power range and other Strax products for a period of two years, and encouraging a Strax employee, Heidi Adams, to sign a Rebate Agreement on behalf of Strax, of which Strax's principals were not aware, in an attempt to benefit itself at Strax's expense.

39. It was unfair within the meaning of section 75-1.1 of the North Carolina General Statutes for Victra (1) to induce Strax to develop the Jewel premium power range and lead Strax to believe that Victra intended to use Strax as a supplier for the Jewel premium power range and other products for a period of two years, and meanwhile, (2) to steal the design of the Jewel premium power range, ask another supplier to produce an identical version of the Jewel premium power range, and (3) to cease using Strax as a supplier after only a few months of the supply relationship, refusing to pay for hundreds of thousands of dollars of product that Strax had produced based on communications from Victra leading Strax to believe that Victra would use

15

Strax as a supplier for a period of two years—and at least for the foreseeable future.

40. It also was unfair within the meaning of section 75-1.1 of the North Carolina General Statutes for Victra to encourage Heidi Adams to sign a Rebate Agreement on behalf of Strax, where she was not authorized to enter such agreements, Victra had no legitimate basis for believing she was authorized to enter such agreements, and Strax's principals were not aware of the agreement.

41. Such conduct was immoral, unethical, oppressive, and unscrupulous.

42. Victra also engaged in deception, within the meaning of section 75-1.1 by telling Strax that Victra was accepting Strax's response to the RFP, by communicating that the RFP was a two-year tender, by placing orders with Strax pursuant to the RFP and RFP response, and increasing its orders under the contract while having no intention to honor a two-year tender and instead switching suppliers after only several months, meanwhile refusing to pay for significant quantities of products that Strax reasonably produced in reliance on Victra's deceptive communications, which reasonably led Strax to believe that Victra intended to use Strax as supplier for a two-year period—and at least for the foreseeable future.

16

Case 5:24-cv-00565-FL     Document 18     Filed 12/02/24     Page 16 of 20

43. The business relationship between Victra and Strax, and Victra's wrongful conduct related to that business relationship, were in or affecting commerce.

44. Strax has been actually injured by Victra's unfair and deceptive practices, including by producing—before Victra informed Strax that Victra intended to switch suppliers—hundreds of thousands of dollars of product pursuant to the supply relationship with Victra, for which Victra has refused to pay.

45. In addition, to the extent the Rebate Agreement may be enforceable (which Strax denies), Strax has been injured by Victra's unfair practices in encouraging Heidi Adams to sign the agreement.

46. Strax seeks and is entitled to compensatory damages, to have the damages trebled, and to have costs, including attorneys' fees, taxed against Victra, pursuant to sections 75-16 and 75-16.1 of the North Carolina General Statutes.

**THIRD CLAIM FOR RELIEF**
**Unjust Enrichment/Quantum Meruit**

47. Strax incorporates herein by reference the allegations contained in the foregoing paragraphs of its counterclaim.

48. Pursuant to communications between Victra and Strax, in which Strax responded to Victra's RFP, Victra accepted Strax's response to the RFP,

17

and Victra requested significant quantities of Strax's new Jewel premium power range and other Strax products, Strax invested significant resources in developing its Jewel premium power range and mobilizing production of the Jewel premium power range and other Strax products.

49. Absent communications from Victra inducing Strax to develop the Jewel premium power range and to mobilize production, Strax would not have invested significant resources in doing so.

50. Pursuant to communications between Victra and Strax, Victra knew that Strax was investing significant resources in developing the Jewel premium power range and mobilizing production of the Jewel premium power range and other Strax products, that Strax was doing so because Victra had requested it, and that Strax expected to be paid for the production of these products.

51. Victra benefited from Strax's investment in development of the Jewel premium power range and mobilization of production of other products, as can be seen, among other things, from Victra's placing orders for Strax products, and its decision to copy the design of Strax's Jewel charger and ask an alternate supplier to produce that product under another name.

52. It would be unjust and inequitable to allow Victra to take the Jewel design and give it to another supplier, taking advantage of Strax's labor and investment, which enriched Victra, including because Victra received financial

18

incentives from the other supplier to engage in this unjust and inequitable conduct conduct, and to allow Victra to so benefit at Strax's detriment.

53. It would also be unjust and inequitable for Victra to reap benefits of Strax's investment in development of the Jewel premium power range and mobilization of production of the Jewel premium power range and other products, without having to pay for products that Strax produced based on communications from Victra committing to use Strax as a supplier for a two-year tender, before Victra informed Strax that it would be switching to an alternate supplier.

54. Victra has, nonetheless, wrongfully failed to pay Strax for hundreds of thousands of dollars of product that Strax produced, based on communications from Victra committing to use Strax as a supplier.

55. As a result of the foregoing, Victra has been unjustly enriched and Strax has been unjustly damaged.

56. Strax seeks and is entitled to compensation from Victra, in excess of $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Strax respectfully requests that:

1. Victra have and recover nothing of Strax and that the Complaint be dismissed with prejudice;

2. Any damages awarded to Victra be reduced by the amounts owed under the supply agreement between Victra and Strax;

3. The Court enter judgment in favor of Strax on its counterclaims in an amount to be determined at trial;

4. Strax recover its costs, including reasonable attorneys' fees, as may be provided by law;

5. All issues triable to a jury be tried to a jury; and

6. The Court grant Strax such other and further relief as the Court deems just and proper.

Respectfully submitted, this 2nd day of December, 2024.

    ELLIS & WINTERS LLP

    /s/ Michelle A. Liguori
    Michelle A. Liguori
    N.C. State Bar No. 52505
    Post Office Box 33550
    Raleigh, North Carolina 27636
    Telephone: (919) 865-7000
    Facsimile: (919) 865-7010
    michelle.liguori@elliswinters.com

    *Counsel for Defendant Strax Americas, Inc.*