**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**No. 5:24-cv-00565-FL**

ABC PHONES OF NORTH CAROLINA,
INC. d/b/a VICTRA,

    *Plaintiff,*

  v.

STRAX AMERICAS, INC. and
MATTER BRANDS LLC,

    *Defendants.*

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT STRAX AMERICAS, INC.'S MOTION TO DISMISS

# CONTENTS

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................. 2

    A.    Rebate Agreement ................................................................ 2

    B.    Strax Purports to Offload All of its Assets. ............................ 4

    C.    Procedural History ................................................................ 4

ARGUMENT ..................................................................................................... 5

  I.    This Court Has Personal Jurisdiction Over Strax. .......................... 5

    A.    Personal Jurisdiction Standard ............................................. 5

    B.    Strax Specifically Waived Personal Jurisdiction in the Rebate Agreement. ................................................................ 7

    C.    Strax Would be Subject to Personal Jurisdiction Regardless. ........................................................................... 10

  II.    Victra Properly and Sufficiently Pleads Each of Its Claims ........... 12

    A.    Rule 12(b)(6) Standard ......................................................... 12

    B.    Victra States a Claim for Unfair and Deceptive Trade Practices. .............................................................................. 12

    C.    Victra States a Claim for Fraudulent/Voidable Conveyance. ......................................................................... 14

CONCLUSION .................................................................................................. 17

CERTIFICATE OF WORD COUNT ............................................................... 18

CERTIFICATE OF SERVICE .......................................................................... 19

Plaintiff ABC Phones of North Carolina, Inc. d/b/a Victra ("Victra"), by and through counsel, respectfully submits this Memorandum of Law in Opposition to Defendant Strax Americas, Inc.'s ("Strax") Motion to Dismiss Victra's Complaint.

## **INTRODUCTION**[1]

This case arises out of Strax's breaches of a certain Rebate Agreement and its efforts to offload substantially all of its assets to hinder Victra's ability to recover the amounts it is owed under that agreement. Through its Motion to Dismiss, Strax argues that it is not subject to personal jurisdiction in North Carolina and, separately, that Victra fails to state claims for unfair and deceptive trade practices or fraudulent/voidable conveyance.

Strax's personal jurisdiction argument fails for at least two separate and independent reasons. First, Strax waived its challenge to personal jurisdiction when it expressly agreed that "any dispute arising [under the Rebate Agreement] shall be adjudicated exclusively in the federal or state courts located in Wake County, North Carolina." Strax does not attack the Rebate Agreement's forum selection clause as unreasonable, nor does it dispute the enforceability of the Rebate Agreement through its Motion to Dismiss. The Rebate Agreement's mandatory forum selection clause is necessarily fatal to Strax's jurisdictional challenge.

Second, even if Strax had not explicitly agreed to litigate disputes arising under the Rebate Agreement in this Court, the result would be the same because

---

[1] After Strax's Motion to Dismiss was filed, it accepted and acknowledged service of process. (*See* DE 23.) Thus, Strax's Motion to Dismiss is moot to the extent its argument is premised upon the sufficiency of service.

Case 5:24-cv-00565-FL    Document 32    Filed 01/22/25    Page 3 of 21

Strax purposefully availed itself of the privilege of conducting activities in this State. By its own account, in the months preceding the Rebate Agreement, Strax deliberately and intentionally reached into North Carolina, submitting a "proposal" to do business with Victra. The present dispute arises out of that contact.

Strax's arguments for dismissal under Rule 12(b)(6) are similarly unpersuasive, as the Complaint thoroughly identifies the bases for Victra's claims and sets out in detail the specific facts necessary to state claims for each cause of action. As discussed below, Victra alleges substantial aggravating circumstances which accompanied Strax's breaches of the Rebate Agreement. Moreover, the Complaint includes more than sufficient facts to state a claim for fraudulent transfer, including facts to support substantially all of the statutory factors relevant to whether a debtor acted with intent to hinder, delay, or defraud a creditor.

For these reasons, Strax's Motion to Dismiss should be denied.

## STATEMENT OF FACTS

A.    Rebate Agreement

Strax is an original equipment manufacturer of certain products, including phone accessories. (DE 1 [hereinafter "Compl."] ¶ 7.) At all relevant times, Victra purchased and sold products manufactured by Strax to its customers. (*Id.* ¶ 8.) The products manufactured by Strax and sold by Victra to its customers were purchased through a third-party supplier, Superior Communications, Inc. ("Superior"). (*Id.* ¶ 9.) Under this arrangement, Victra purchased products manufactured by Strax through Superior and paid Superior directly for those Strax products. (*Id.* ¶ 10.)

2

Victra and Strax agreed that Strax would directly pay Victra rebates for Victra's purchases of Strax products through Superior. (*Id.* ¶ 11.) Specifically, effective July 1, 2023, Victra and Strax entered into the Rebate Agreement, pursuant to which Strax agreed to pay Victra rebates for certain Strax products Victra purchased through Superior (the "Rebates"). (*Id.* ¶ 12; Compl. Ex. A, DE 1-1, [hereinafter "Rebate Agreement"].)

In the Rebate Agreement, the parties, including Strax, agreed as follows:

> This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina, without regard to its conflict of laws principles, and ***any dispute arising hereunder shall be adjudicated exclusively in the federal or state courts located in Wake County, North Carolina***.

(Rebate Agreement § 4 (emphasis added).)

At the time Strax entered into the Rebate Agreement, it knew or should have known that it would be unable to pay the Rebates to Victra because of its financial condition. (Compl. ¶¶ 46, 47(a), 47(e), 60-61.)

After July 1, 2023, Victra obtained Strax products through Superior which entitled Victra to Rebates from Strax under the terms of the Rebate Agreement. (*Id.* ¶ 14.) Victra provided invoices to Strax for the Rebates on November 8, 2023, January 15, 2024, May 10, 2024, May 22, 2024, and August 2, 2024. (Compl. Ex. B, DE 1-2.) In total, Victra submitted invoices to Strax for the Rebates, totaling $857,965.88. (Compl. ¶ 15.) Strax did not pay any of Victra's invoices in breach of the Rebate Agreement. Rather, Strax withheld payment and represented to Victa that the outstanding, unpaid Rebates would be paid. (*Id.* ¶¶ 15-16, 19, 48(a), 47(b), 47(c).)

Unbeknownst to Victra, Strax was simultaneously working on a scheme to offload its assets to avoid paying its debts to Victra. (*Id.* ¶¶ 26-30, 47(c), 47(d), 57-65.)

      B.    <u>Strax Purports to Offload All of its Assets.</u>

In early April 2024, shortly after a substantial debt to Victra was incurred, and shortly before a substantial additional debt to Victra was incurred, Strax purported to convey all or substantially all of its assets and business to Defendant Matter Brands, LLC ("Matter Brands") in a transaction which would render Strax unable to satisfy its debts to Victra and without reasonably equivalent value in exchange for the transfer. (Compl. ¶¶ 26-30, 47(c), 47(d), 57-65.) Strax divested its assets with the intent of avoiding its obligations to pay its indebtedness to Victra under the Rebate Agreement. (*Id.* ¶¶ 47(c), 60.) Strax was insolvent or became insolvent as a result of the transfer of all of its assets to Matter Brands. (*Id.* ¶ 65.)

Strax failed to provide notice to Victra that it divested substantially all of its assets, which substantially impaired its ability to cover its indebtedness to Victra. (*Id.* ¶ 47(d).) Accordingly, Victra continued to perform under the Rebate Agreement, (*id.* ¶¶ 15, 16, 47(d), 50, 62), sending invoices to Strax for Rebates on May 10, 2024, May 22, 2024, and August 2, 2024, (Compl. Ex. B, DE 1-2).

      C.    <u>Procedural History</u>

Victra filed its Complaint on October 2, 2024, bringing claims against (i) Strax for breach of contract and unfair and deceptive trade practices and (ii) Strax and Matter Brands for voidable/fraudulent transfer.

4

## ARGUMENT

Through its now-narrowed Motion to Dismiss,[2] Strax currently moves for dismissal of the Complaint under Rule 12(b)(2), arguing that "this Court does not have personal jurisdiction over Strax due to Strax's lack of sufficient minimum contacts with North Carolina." (DE 16 ¶ 3.)  Separately, Strax moves for partial dismissal under Rule 12(b)(6) on Victra's claim for unfair and deceptive trade practices and under Rule 9(b) on Victra's claims for unfair and deceptive trade practices and voidable/fraudulent transfer to the extent those claims are based on fraud.  (DE 16 ¶¶ 5-6.)  Strax does not move to dismiss Victra's claim for breach of the Rebate Agreement.

## I.     **This Court Has Personal Jurisdiction Over Strax.**

This Court has personal jurisdiction over Strax because it specifically waived any challenge to personal jurisdiction through the Rebate Agreement's forum selection clause.  On top of that, and at the risk of engaging in an academic argument, Strax purposefully availed itself of the privilege of conducting activities in North Carolina by reaching into this State with a proposal to do business with Victra.

### A.     Personal Jurisdiction Standard

At the motion to dismiss stage, "the plaintiff must establish personal jurisdiction by a preponderance of the evidence but need only make a prima facie showing." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020)

---

[2] While Strax also moved to dismiss under Rule 12(b)(5) challenging the sufficiency of service of process, it subsequently accepted service of the Summons and Complaint and confirmed that its Motion is moot to the extent that it was brought under Rule 12(b)(5).  (DE 23.)

(cleaned up and citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). When considering whether this burden is met, courts must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.*

"A lawful assertion of personal jurisdiction over a defendant requires satisfying the standards of the forum state's long-arm statute and respecting the safeguards enshrined in the Fourteenth Amendment's Due Process Clause." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). Because "North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause, . . . the dual jurisdictional requirements collapse into a single inquiry" of whether personal jurisdiction comports with due process. *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan,* 259 F.3d 209, 215 (4th Cir. 2001).

"[D]ue process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." *Aerotek Inc. v. Babcock & Wilcox Solar Energy, Inc.*, No. 1:24-cv-00177-JRR, 2024 U.S. Dist. LEXIS 206648, at *6 (D. Md. Nov. 14, 2024) (quoting *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001)). Indeed, "[c]hallenges to personal jurisdiction may be waived by either express or implied consent." *Id.*; *see Consulting Eng'rs Corp. v. Geometric Ltd.,* 561 F.3d 273, 281 n.11 (2009) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." (citation omitted)).

In the absence of a defendant's waiver of personal jurisdiction through a forum selection clause (such as that present here), "[t]o decide whether specific jurisdiction exists, [courts] examine: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the [s]tate; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004).

B.   <u>Strax Specifically Waived Personal Jurisdiction in the Rebate Agreement.</u>

Strax's Motion to Dismiss under Rule 12(b)(2) must be denied because it explicitly agreed to litigate this dispute in this Court and thus waived any personal jurisdiction argument.

"Obviously, a valid forum-selection clause, even standing alone, can confer personal jurisdiction." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1292 n.4 (7th Cir. 1989) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)); *see, e.g., Aerotek Inc.*, 2024 U.S. Dist. LEXIS 206648, at *6 ("A valid forum selection clause is sufficient to confer personal jurisdiction on a non-resident defendant."); *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 667-68 (D. Md. 2009) (same). Indeed, "[p]ersonal jurisdiction can be waived, which means that parties to an agreement may 'contract around principles of personal jurisdiction by consenting to resolve their disputes in specified tribunals.'" *IHFC Props., LLC v. APA Mktg.*, 850 F. Supp. 2d 604, 618-19 (M.D.N.C. 2012) (concluding that lease's "forum selection clause (which neither party has attacked as unreasonable) provides an

7

independent basis for exercising personal jurisdiction over the parties to the agreement").

Notably absent from Strax's personal jurisdiction argument is any reference to the operative and dispositive language appearing in the Rebate Agreement:

> This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina, without regard to its conflict of laws principles, and ***any dispute arising hereunder shall be adjudicated exclusively in the federal or state courts located in Wake County, North Carolina***.

(Rebate Agreement § 4 (emphasis added).)

"Generally, under federal common law, courts 'favor enforcement' of forum selection clauses, so long as the clause is not unreasonable." *Aerotek Inc.*, 2024 U.S. Dist. LEXIS 206648, at *6 (quoting *Albemarle Corp. v. AstraZeneca UK Ltd.,* 628 F.3d 643, 649 (4th Cir. 2010)); *IHFC Props., LLC,* 850 F. Supp. 2d at 619 ("Forum selection clauses are presumed enforceable unless they are 'unreasonable' under the circumstances.").

Here, Strax has not attacked the Rebate Agreement's mandatory forum selection clause as unreasonable. (*See* DE 17 at 11-16.) Nor does Strax dispute the enforceability of the Rebate Agreement through its Motion to Dismiss (much less as a basis for contesting personal jurisdiction). To the contrary, according to Strax, the Rebate Agreement—in which it agreed to litigate disputes arising thereunder in North Carolina—somehow "supports the conclusion" that it cannot be required to litigate those disputes in North Carolina.[3] (DE 17 at 15.) In doing so, Strax misstates

---

[3] Because Strax has not contested the validity of the Rebate Agreement for purposes of its Motion to Dismiss—and in fact relies upon that agreement to purportedly support its

the law by conflating choice of law provisions with forum selection clauses, and suggesting that *Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273 (4th Cir. 2009), stands for the proposition that a "venue-selection clause is not dispositive to the Court's analysis." (DE 17 at 15-16.) In *Consulting Eng'rs Corp.*, the Fourth Circuit cautioned against such conflation, dropping a footnote to "note in passing that a valid ***forum*** selection clause, unlike a choice of law clause, may act as a waiver to objections to personal jurisdiction," and confirmed that "[i]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court[.]" *Consulting Eng'rs Corp.*, 561 F.3d at 281 n.11 (emphasis in original). While the choice of law provision in the Rebate Agreement (which designates North Carolina law) may not be dispositive, *id.*, 561 F.3d at 281, the forum selection clause operates as a dispositive waiver of Strax's current challenge and provides an "independent ground for the exercise of personal jurisdiction, separate and distinct from any personal jurisdiction based on minimum contacts." *Glob. Archery Prods. v. Firgaira*, No. 1:16-CV-19-JVB-SLC, 2017 U.S. Dist. LEXIS 42121, at *5 (N.D. Ind. Mar. 22, 2017); *see, e.g., Oyster HR, Inc. v. Exclusive Grp., LLC*, No. 3:24-CV-00580-FDW-SCR, 2024 U.S. Dist. LEXIS 154934, at *5 (W.D.N.C. Aug. 27, 2024) ("This forum selection clause provides an ***independent basis*** for exercising personal jurisdiction over the parties to the agreement." (emphasis added)).

For these reasons, the Rebate Agreement's forum selection clause, standing alone, is fatal to Strax's personal jurisdiction challenge.

---

argument—any effort to change its position in a reply should be summarily rejected.

C. <u>Strax Would be Subject to Personal Jurisdiction Regardless.</u>

In light of the Rebate Agreement's forum selection clause, Strax's argument based upon the factors enumerated in *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273 (4th Cir. 2009), is academic. Indeed, Strax's contacts with this forum are "irrelevant," *Interlogic Outsourcing v. Onesource Virtual*, No. 3:18CV300-PPS, 2018 U.S. Dist. LEXIS 233519, at *11-13 (N.D. Ind. Sep. 24, 2018), because Strax "didn't have to have any contacts with th[is] state in order to bind itself by a forum-selection clause, which typically requires one of the parties to the clause to litigate in a jurisdiction with which it has sparse if any contacts, as otherwise there would be no need for the clause." *Knauf Insulation, Inc. v. Southern Brands, Inc.*, 820 F.3d 904, 906 (7th Cir. 2016); *see, e.g., Consulting Eng'rs Corp.*, 561 F.3d at 281 n.11.

However, even if Strax had not explicitly waived its personal jurisdiction challenge by agreeing to litigate disputes arising under the Rebate Agreement in this Court, the result would be the same because Strax purposefully availed itself of the privilege of conducting activities in North Carolina. By its own account, in the months preceding the Rebate Agreement, Strax deliberately and intentionally reached into North Carolina with a proposal to do business with Victra. According to Strax's version of events, on or about December 12, 2022, Victra put out an open call to manufactures of power products, publishing a "Victra Power Portfolio Request for Proposal" (the "RFP"). (DE 16-1 ¶ 6.) Strax concedes that the RFP was "published" and open to "manufacturers like Strax" around the country. (*Id.*) By its own account, in response to the RFP, Strax reached directly into North Carolina in hopes of doing

10

business with Victra, not vice versa. (*Id*.) In particular, according to Strax, on January 13, 2023, it initiated direct contact with Victra, submitting a proposal in response to the RFP. (DE 16-1 ¶ 7.) The Rebate Agreement which serves as the basis for this suit (and in which Strax consented to personal jurisdiction in North Carolina), was signed as a direct result of Strax reaching into this State with a proposal to do business with Victra.

Strax's submission of a proposal in response to the RFP which Victra "published" establishes that Strax purposefully availed itself of the privilege of conducting activities in North Carolina. *See, e.g., Dagher v. Lathrop & Gage LLP,* No. CV-17-00084-TUC-RM, 2017 U.S. Dist. LEXIS 229813, at *14 (D. Ariz. July 17, 2017) ("Lathrop's submission of a response to the UA's request for proposals is sufficient to establish purposeful availment[.]"); *Albertson's Ltd. Liab. Co. v. Kleen-Sweep Janitorial Co.*, No. 09-263-S-BLW, 2009 U.S. Dist. LEXIS 105088, at *13 (D. Idaho Nov. 9, 2009) (finding personal jurisdiction where defendant, "responding to a Request for Proposal issued to cleaning companies throughout the United States, submitted its proposal to [plaintiff] at its Boise, Idaho headquarters"); *see also CFA Inst. v. Inst. of Chartered Fin. Analysts of India,* 551 F.3d 285, 295 n.17 (4th Cir. 2009) (whether the defendant initiated contact with the forum state is a factor that is afforded "special weight" in the due process analysis).

After reaching into this State with a proposal to do business with Victra, a North Carolina company, and subsequently agreeing to litigate the present dispute in North Carolina, Strax cannot be surprised that it is now subject to personal

jurisdiction in this State.

## II.    **Victra Properly and Sufficiently Pleads Each of Its Claims.**

Strax's arguments under Rule 12(b)(6) are similarly unpersuasive.

### A.    Rule 12(b)(6) Standard

When considering a Rule 12(b)(6) motion to dismiss, the court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  To survive a 12(b)(6) motion, the facts alleged simply "'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'"  *Robinson v. Am. Honda Motor Co.,* 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  Factual claims need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief, 'in order to give [the opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 545 (citations omitted).  The claim must have sufficient factual "heft to [show] that the pleader is entitled to relief" and must be "plausible on its face" with sufficient factual allegations "to raise a right to relief above the speculative level."  *Id.* at 544, 555, 557.

### B.    Victra States a Claim for Unfair and Deceptive Trade Practices.

To state a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, a plaintiff must allege "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to

his business." *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 593, 619 S.E.2d 577, 582 (2005). A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007). "[A] practice is deceptive if it has the capacity or tendency to deceive." *Id.*

A plaintiff under the UDTPA does "not have to prove fraud, bad faith, or intentional deception, but proof of fraud necessarily constitutes a violation of the [UDTPA]." *Canady v. Mann*, 107 N.C. App. 252, 260, 419 S.E.2d 597, 602 (1992) (citations omitted). A breach of contract is sufficient to sustain an action under the UDTPA where, as here, "the breach is surrounded by substantial aggravating circumstances." *Griffith v. Glen Wood Co.,* 184 N.C. App. 206, 217, 646 S.E.2d 550, 558 (2007).

Here, Victra alleges substantial aggravating circumstances which accompanied Strax's breaches of the Rebate Agreement. Strax entered into the Rebate Agreement when it knew or should have known that it would be unable to satisfy its payment obligations to Victra thereunder. (Compl. ¶¶ 46, 47(a), 47(e), 60-61.) Nevertheless, it chose to make a hollow promise of Rebates in order to induce Victra to purchase Strax products through Superior. (*Id.* ¶¶ 12, 46, 47(a), 47(e), 50.)

Once the Rebate Agreement was in effect, Strax withheld payment on its debts to Victra and represented to Victa that the outstanding, unpaid Rebates would be paid. (*Id.* ¶¶ 15-16, 19, 48(a), 47(b), 47(c).) Unbeknownst to Victra, Strax was

simultaneously working on a scheme to offload all or substantially all of its assets (which could be used to satisfy its debts) to Matter Brands in a transaction which would render Strax unable to satisfy its debts to Victra and without reasonably equivalent value in exchange for the transfer. (*Id.* ¶¶ 26-30, 47(c), 47(d), 57-65.)

After the transaction was complete, Strax failed to provide notice to Victra that it divested all or substantially all of its assets and business to Matter Brands which substantially impaired Strax's ability to cover its indebtedness to Victra. (*Id.* ¶¶ 47(d).) In the months after Strax offloaded substantially all of its assets and business to Matter Brands, Victra continued to perform under the Rebate Agreement. (*Id.* ¶¶ 47(d), 62.) In fact, Victra continued to invoice Strax for the Rebates, (Compl. ¶¶ 15, 16, 47(d), 50, 62), sending invoices to Strax on May 10, 2024, May 22, 2024, and August 2, 2024, (Compl. Ex. B, DE 1-2). Unbeknownst to Victra, Strax had already offloaded the assets which could be used to satisfy these debts. (Compl. ¶¶ 26, 30, 47(c), 47(d), 57-65.)

C.    Victra States a Claim for Fraudulent/Voidable Conveyance.

"In order to avoid a fraudulent transfer under North Carolina General Statute § 39-23.4, a plaintiff must establish the following: (1) a debtor made a transfer or incurred an obligation and (2) with actual intent to hinder, delay, or defraud a creditor or without receiving a reasonably equivalent value in exchange." *In re Parker*, 581 B.R. 468, 480 (Bankr. E.D.N.C. 2018) (concluding complaint stated a claim for fraudulent transfer because it "contain[ed] detailed facts to support each

14

legal element, including identification of the parties, dates, and property at issue, details regarding the transfer transaction, and other material facts").

Strax moves to dismiss Victra's fraudulent/voidable conveyance claim, but only to the extent that the claim is based upon actual fraud.[4]  A transfer from a debtor is voidable or fraudulent as to a creditor where the debtor made the transfer with "intent to hinder, delay, or defraud any creditor of the debtor."  N.C. Gen. Stat. § 39-23.4(a)(1).[5]  Courts consider a number of factors when assessing whether a debtor acted with intent to hinder, delay, or defraud a creditor, including whether the "debtor retained possession or control of the property transferred after the transfer," the "transfer . . . was . . . concealed," the "transfer was of substantially all the debtor's assets," the "debtor absconded," the "value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred," the "debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred," the "transfer occurred shortly before or shortly after a substantial debt was incurred," and the "debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as they became due."  N.C. Gen. Stat. § 39-23.4(b).

---

[4]  A fraudulent conveyance claim, including the one asserted here, can exist even in the absence of actual fraud.  *See* N.C. Gen. Stat. §§ 39-23.4, 39-23.5; Fla. Stat. §§ 726.105, 726.106; Del. Code Ann. tit. 6 §§ 1304, 1305; UT Code §§ 25-6-202, 25-6-203.

[5]  *See also* Fla. Stat. § 726.105(1)(a); Del. Code Ann. tit. 6 § 1304(a)(1); UT Code § 25-6-202(1)(a).

15

Here, the Complaint alleges more than sufficient facts to state a claim for fraudulent transfer against Strax, including facts to support each of the factors enumerated above. Victra alleges that it was a creditor of Strax, (Compl. ¶¶ 15, 19, 58); that Strax was on notice of Victra's claim, (*id.* ¶¶ 15-17, 58); that Strax transferred substantially all its assets, (*id.* ¶¶ 26-30, 57); that Strax concealed the transfer from Victra, (*id.* ¶ 47(d)); that Strax was insolvent or became insolvent as a result of the transfer, (*id.* ¶ 65); the transfer occurred shortly before and shortly after a substantial debt to Victra was incurred, (*id.* ¶¶ 61-62); that Strax did not receive a reasonably equivalent value in exchange for the transfer, (*id.* ¶¶ 29, 64); that the transfer rendered Strax unable to pay its debts to Victra as they became due, (*id.* ¶¶ 30, 47(d), 60); and that Strax transferred the assets with the intent to hinder, delay, and defraud Victra, (*id.* ¶¶ 28, 47(c), 58-59). Moreover, Victra alleges the general date of the transfer, the transferee, the transferor, the method of the transfer, and the property transferred. (*Id.* ¶¶ 26, 57.)

These allegations, taken together, are sufficient to sustain a claim for fraudulent or voidable transfer. *See, e.g., In re Parker*, 581 B.R. 468, 480 (Bankr. E.D.N.C. 2018); *McFee v. Presley*, 2022 NCBC LEXIS 142, at *12 (N.C. Super. Ct. Nov. 29, 2022) (plaintiff alleged facts sufficient to state a claim for fraudulent transfer against an LLC where complaint alleged plaintiff was a creditor of LLC, LLC was on notice of plaintiff's claim, LLC transferred substantially all its assets, LLC concealed the transfer from plaintiff, and defendants transferred the assets with the intent to hinder, delay, and defraud plaintiff); *Ivey v. Swofford*, 463 B.R. 775, 2012 Bankr.

16

LEXIS 313 (Bankr. M.D.N.C. 2012) (trustee adequately alleged a debtor's fraudulent intent where complaint included particulars as to the identity of the transfers sought to be avoided, including the date, transferor, transferee, method of transfer, and amount of each alleged transfer).

## CONCLUSION

For the foregoing reasons, Victra respectfully requests that the Court deny Strax's Motion to dismiss.

Respectfully submitted, this the 22nd day of January, 2024.

**K&L GATES LLP**

By: */s/ Daniel D. McClurg*
John R. Gardner
N.C. State Bar No. 32683
301 Hillsborough St., Suite 1200
Raleigh, NC 27603
Tel: (919) 743-7325
Fax: (919) 743-7358
Email: John.Gardner@klgates.com

Daniel D. McClurg
N.C. Bar Number 53768
300 South Tryon Street, Suite 1000
Charlotte, NC 28202
Phone:    (704) 331-7444
Fax:       (704) 331-7598
Email:     daniel.mcclurg@klgates.com

*Attorneys for Plaintiff ABC Phones of North Carolina, Inc. d/b/a Victra*

17

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.2(f)(3), the undersigned hereby certifies that the foregoing memorandum contains fewer than 8,400 words, exclusive of the elements to be omitted from the word count per Rule 7.2(f)(1). Specifically, the foregoing memorandum contains 4,413 words, as reported by counsel's word processing software.

This the 22nd day of January 2025.

*/s/ Daniel D. McClurg*
Daniel D. McClurg

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing served this day by filing electronically via the CM/ECF system, which will send notification of such filing to the following participants:

Michelle A. Liguori
ELLIS & WINTERS LLP
Post Office Box 33550
Raleigh, North Carolina 27636
michelle.liguori@elliswinters.com
Counsel for Defendant Strax Americas, Inc.

Michael D. DeFrank
mdefrank@wyrick.com
Mary Kate Gladstone
mgladstone@wyrick.com
4101 Lake Boone Trail, Suite 300
Raleigh, North Carolina 27607
Attorneys for Defendant Matter Brands, LLC

This the 22nd day of January 2025.

*/s/ Daniel D. McClurg*
Daniel D. McClurg